**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Barbara Simon, an individual, | ) | No. CV 10-726-PHX-SRB |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Robert Finvarb, an individual; Finvarb | ) | |
| Group, LLC; Phoenix RI, LLC; Robert | ) | |
| Finvarb Companies, LLC; Finvarb | ) | |
| Hospitality, Inc.; Marriott International, | ) | |
| Inc.; Marriott Resorts Hospitality, Inc.; | ) | |
| The Weitz Construction Co., Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Pending before the Court is Defendants' Motion to Dismiss. (Doc. 7, Mot. to Dismiss.)

**I.     BACKGROUND**

Barbara Simon ("Plaintiff"), a resident of Ohio, claims she was injured at the Marriott Residence Inn Phoenix Desert View at Mayo Clinic ("the Hotel") on or about November 17, 2009. (Doc. 1, Compl. ¶¶ 12, 14.1-15.)[1] At the time, Plaintiff was in Phoenix to receive treatment for fibromyalgia and lupus – conditions that confine her to a wheelchair. (*Id.* ¶ 13.)

---

[1] The Complaint contains two paragraphs numbered "14." (*See* Compl. at 3.) To avoid ambiguity, this Order will append ".1" or ".2" to these numbers, indicating that the cited paragraph is the first or second paragraph bearing that number.

1   Plaintiff claims that she was seated in a shower seat while showering at the Hotel, when the

2   shower seat collapsed, causing Plaintiff to fall to the floor. (*Id.* ¶¶ 14.1-14.2.) Plaintiff asserts

3   that the fall caused and continues to cause her "severe pain, bruising, loss of movement, loss

4   of ability to exercise, loss of freedom of movement, loss of consortium, loss of sleep, medical

5   bills and expenses." (*Id.* ¶ 15.)

6          On March 31, 2010, Plaintiff filed this action to recover for her injuries against eight

7   Defendants: Robert Finvarb as an individual; Finvarb Group, LLC; Phoenix RI, LLC; Robert

8   Finvarb Companies, LLC; Finvarb Hospitality, Inc.; Marriott International Inc.; Marriott

9   Resorts Hospitality Corp.; and The Weitz Construction Co., Inc. ("Weitz") (collectively,

10  "Defendants"). (*Id.* at 1.) Plaintiff states that Defendants Marriott International and Marriott

11  Resorts Hospitality (collectively, the "Marriott Defendants") "operate and manage" the

12  Hotel. (*Id.* ¶ 19.) Plaintiff also claims that the Marriott Defendants "designed the shower seat

13  in question, with[] actual knowledge that handicapped individuals would be hotel guests."

14  (*Id.* ¶ 20.) In addition, Plaintiff states that Defendants Robert Finvarb, Finvarb Group,

15  Phoenix RI, Robert Finvarb Companies, and Finvarb Hospitality (collectively, the "Finvarb

16  Defendants") own and "designed or ordered the design" of the Hotel. (*Id.* ¶¶ 16, 17.) Plaintiff

17  asserts, "The Finvarb [D]efendants knew that many guests of the hotel would be handicapped

18  and should have designed or had properly designed the shower seats to accommodate such

19  guests." (*Id.* ¶ 18.)

20         Robert Finvarb states that he is a Florida resident who is the manager of Phoenix RI

21  and of Phoenix RI Manager, LLC. (Mot. to Dismiss, Attach. 1, Affidavit ("Finvarb Aff.")

22  at 2.) He states that Phoenix RI Manager is the manager of Phoenix RI Owner,[2] and Phoenix

23  RI Owner "is the sole owner of the [Hotel]." (*Id.*) He also states that all three of the Phoenix

24  RI companies "are headquartered and domiciled in Florida" and are "authorized to conduct

25  business in Arizona." (*Id.*)

26

27         [2] Phoenix RI Manager, LLC and Phoenix RI Owner, LLC are not parties to this

28  litigation.

1    On these facts, Plaintiff brings a claim against the Finvarb and Marriott Defendants
2    for strict liability (Claim 1) stating that "[h]otel owners and operators are strictly liable for
3    the safety of their guests when a shower seat intended to be used by handicapped guests,
4    collapses." (Compl. ¶ 24.) Plaintiff also brings a claim against all Defendants for negligence
5    (Claim 2) stating that "Defendants were negligent in the design, installation and maintenance
6    of the shower seat in question." (*Id*. ¶ 27.) Plaintiff further claims that Defendants were
7    grossly negligent and that she is entitled to punitive damages. (*Id*. ¶¶ 29-33.)

8    On April 26, 2010, Defendants filed a Motion to Dismiss the Finvarb Defendants,
9    with the exception of Phoenix RI, for lack of personal jurisdiction. (Mot. to Dismiss at 6-10.)
10   Plaintiff consents to the dismissal of Robert Finvarb Companies, Finvarb Group, and Finvarb
11   Hospitality, but asserts that this Court has personal jurisdiction over Robert Finvarb because,
12   as the manager of Phoenix RI, he has sufficient minimum contacts with Arizona. (Doc. 22,
13   Pl.'s Opp'n to the Mot. to Dismiss ("Pl.'s Opp'n") at 1-2.)

14   In addition, Defendants move to dismiss Plaintiff's claims for strict liability for failure
15   to state a claim.[3] (Mot. to Dismiss at 3-6.) Defendants assert that hotels cannot be held
16   strictly liable for injuries to guests caused by dangerous conditions. (*Id*. at 3.) Finally,
17   Defendants argue that this Court should dismiss Plaintiff's request for punitive damages,
18   because Plaintiff has not alleged facts sufficient to entitle her to punitive damages. (*Id*. at 6.)

19   **II.    Motion to Dismiss for Lack of Personal Jurisdiction**

20   Plaintiff argues that this Court has personal jurisdiction over Robert Finvarb because
21   he is the manager of Phoenix RI, and this Court has personal jurisdiction over Phoenix RI.

22

23

---

24   [3] Defendants also moved to dismiss Plaintiff's claim for gross negligence, but this Court denies that portion of the Motion without further analysis. (*See* Mot. to Dismiss at 4-5.)
25   Plaintiff was not actually bringing a separate cause of action for gross negligence but merely claiming that Defendants' negligence rose to a higher level, thus entitling Plaintiff to punitive
26   damages. (*Compare* Compl. at 4-5 (labeling the claims of strict liability and negligence – but not gross negligence – as "cause[s] of action") *with* Pl.'s Opp'n at 5 (acknowledging that
27   gross negligence is not a separate cause of action, but stating that it is relevant to punitive
28   damages).)

1  (Pl.'s Opp'n at 1-2.)

2        **A.    Fiduciary Shield Doctrine**

3        "Under the fiduciary shield doctrine, a person's mere association with a corporation

4  that causes injury in the forum state is not sufficient in itself to permit that forum to assert

5  jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989);

6  *cf. Prestige Admin., Inc. v. U.S. Fidelis, Inc.*, No. CV09-1804-PHX-DGC, 2010 WL

7  1531163, at *2 (D. Ariz. Apr. 15, 2010) (applying the fiduciary shield doctrine to the vice

8  president of a limited liability company). However, a court can pierce the corporate veil and

9  exercise jurisdiction over an individual based on his company's contacts if the individual is

10  the alter ego of the company. *Davis*, 885 F.2d at 520; *see also Dietel v. Day,* 492 P.2d 455,

11  457 (Ariz. Ct. App. 1972) (holding that the corporate form may be ignored where the

12  corporation is the alter ego of the individual defendant). Under Arizona law, "The corporate

13  fiction will be disregarded when [1] the corporation is the alter ego or business conduit of a

14  person, and . . . [2] to observe the corporation would work an injustice." *Ize Nantan Bagowa,*

15  *Ltd. v. Scalia*, 577 P.2d 725, 728 (Ariz. Ct. App. 1978).

16        However, the fiduciary shield doctrine "does not somehow insulate [employees] from

17  jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Instead, "Each defendant's contacts

18  with the forum State must be assessed individually." *Id.* Thus, the jurisdictional inquiry is

19  whether the "exercise of jurisdiction accords with 'traditional notions of fair play and

20  substantial justice' embodied in the Due Process clause of the Fourteenth Amendment and

21  not whether the fiduciary shield doctrine bars jurisdiction." *Brink v. First Credit Res.*, 57 F.

22  Supp. 2d 848, 860 (D. Ariz. 1999) (citing *Macpherson v. Taglione*, 762 P.2d 596, 599 (Ariz.

23  Ct. App. 1988)).

24        In this case, Plaintiff has not alleged a single fact suggesting that Phoenix RI is the

25  alter ego of Robert Finvarb. Plaintiff only states that Robert Finvarb is the manager of

26  Phoenix RI. (Pl.'s Opp'n at 1.) However, this does not mean that this Court cannot exercise

27  jurisdiction over Robert Finvarb. *See Calder*, 465 U.S. at 790 (stating that defendants' "status

28  as employees does not somehow insulate them from jurisdiction"). Rather, this Court can

1   exercise jurisdiction if Robert Finvarb has sufficient contacts with Arizona, aside from his

2   position with Phoenix RI. *See Davis*, 885 F.2d at 522 (finding that Arizona may assert

3   "personal jurisdiction over officers of a corporation as long as the court finds those officers

4   to have sufficient minimum contacts with Arizona").

5   **B.    Personal Jurisdiction**

6       Defendants assert that "Robert Finvarb's only contact with Arizona is in his capacity

7   as a manager of [Phoenix RI and Phoenix RI Manager]," and therefore, he does not have

8   sufficient contacts to justify jurisdiction over him. (Mot. to Dismiss at 10.) When a motion

9   to dismiss for lack of personal jurisdiction is made, the party bringing the action has the

10  burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co.

11  of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S.

12  178, 182-83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th

13  Cir. 1977). There is no statutory method for resolving the question of personal jurisdiction,

14  so "the mode of determination is left to the trial court." *Data Disc,* 557 F.2d at 1285 (citing

15  *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where, as here, a court resolves the question of

16  personal jurisdiction using motions and supporting affidavits, the plaintiff "must make only

17  a prima facie showing of jurisdictional facts through the submitted materials in order to avoid

18  a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met that

19  burden, the "'uncontroverted allegations in [the plaintiff's] complaint must be taken as true,

20  and conflicts between the facts contained in the parties' affidavits must be resolved in [the

21  plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction

22  exists.'" *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (quoting

23  *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

24      To establish personal jurisdiction over a nonresident defendant, a plaintiff must show

25  that the forum state's long-arm statute confers jurisdiction over the defendant and that the

26  exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk

27  v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm

28  statute allows the exercise of personal jurisdiction to the same extent as the U.S. Constitution.

1   *See* Ariz. R. Civ. Proc. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997). This

2   reduces the issue of personal jurisdiction to one of federal due process. *A. Uberti & C. v.*

3   *Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995).

4         Due process requires that a nonresident defendant have sufficient minimum contacts

5   with the forum state so that "maintenance of the suit does not offend 'traditional notions of

6   fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

7   (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc,* 557 F.2d at 1287.

8   Courts recognize two bases for personal jurisdiction within the confines of due process: (1)

9   general jurisdiction, which permits the state to exercise jurisdiction over the defendant in all

10  matters; and (2) specific jurisdiction, which arises out of the defendant's contacts with the

11  forum state giving rise to the subject litigation. *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796

12  F.2d 299, 301-02 (9th Cir. 1986); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

13  U.S. 408, 414-15 & nn.8-9. (1984).

14        Neither party provides any facts suggesting that this Court has general jurisdiction

15  over Robert Finvarb, so the analysis hinges on whether the Court has specific jurisdiction.

16        [T]he issue [of] whether [specific] jurisdiction will lie turns on an evaluation
      of the nature and quality of the defendant's contacts in relation to the cause of

17        action. In [the Ninth Circuit], we use the following approach in making this
      evaluation: (1) The nonresident defendant must do some act or consummate

18        some transaction with the forum or perform some act by which he purposefully
      avails himself of the privilege of conducting activities in the forum, thereby

19        invoking the benefits and protections of its laws. (2) The claim must be one
      which arises out of or results from the defendant's forum-related activities. (3)

20        Exercise of jurisdiction must be reasonable.

21  *Data Disc*, 557 F.2d at 1287. The plaintiff bears the burden of establishing the first two

22  prongs of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th

23  Cir. 2004).

24        Plaintiff does not allege a single fact to satisfy either of the first two prongs. As stated,

25  Phoenix RI's contacts with Arizona cannot be imputed to Robert Finvarb as an individual.

26  *See supra* Part II.A. Since that is Plaintiff's only argument for why this Court has jurisdiction

27  over Robert Finvarb, the Defendants have no burden to show unreasonableness in order to

28  prevail on their Motion to Dismiss for lack of personal jurisdiction. Therefore, this Court

1   dismisses Robert Finvarb for lack of personal jurisdiction, and the remaining Defendants are

2   Phoenix RI, the Marriott Defendants, and Weitz.

3   **III.    Motion to Dismiss for Failure to State a Claim**

4          Defendants also move to dismiss Plaintiff's claim for strict liability and request for

5   punitive damages. The Federal Rules of Civil Procedure require "only 'a short and plain

6   statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

7   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl.*

8   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47

9   (1957)); *see also* Fed. R. Civ. P. 8(a)(2). Thus, dismissal for insufficiency of a complaint is

10  proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 757,

11  759 (9th Cir. 1980). A Rule 12(b)(6) dismissal for failure to state a claim can be based on

12  either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a

13  cognizable legal claim. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990);

14  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In determining

15  whether an asserted claim can be sustained, all allegations of material fact are taken as true

16  and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness*

17  *Network*, 18 F.3d 752, 754 (9th Cir. 1994). This presumption applies only to facts and "is

18  inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The

19  Supreme Court has explained that factual allegations "must be enough to raise a right to relief

20  above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1950

21  (the well-pleaded facts must "permit the court to infer more than the mere possibility of

22  misconduct"). In ruling on a motion to dismiss, the issue is not whether the plaintiff will

23  ultimately prevail, but whether the claimant is entitled to offer evidence to support the

24  claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

25  **A.    Strict Liability**

26          Plaintiff argues that the Marriott Defendants and Phoenix RI "are strictly liable for the

27  safety of their guests when a shower seat to be used by handicapped guests[] collapses."

28  (Compl. ¶ 24.) Under Arizona law, products liability actions are governed by Arizona

1    Revised Statutes ("A.R.S.") §§ 12-681 to -688 (collectively, "Arizona products liability

2    statutes"). However, these statutes do not significantly alter Arizona's common law of

3    product liability. *See Torres v. Goodyear Tire & Rubber Co.*, 786 P.2d 939, 947 (Ariz. 1990)

4    (noting that sections 683-686 "purport to do no more than establish certain affirmative

5    defenses . . . ; provide for indemnification between manufacturers and sellers; regulate the

6    contents of *ad damnum* clauses; and deal with evidentiary issues pertaining to remedial

7    measures" (internal citations omitted)).

8         Under Arizona law, only manufacturers and sellers can be held strictly liable for

9    injuries resulting from defective and unreasonably dangerous products they sell. *Antone v.*

10   *Greater Ariz. Auto Auction*, 155 P.3d 1074, 1076 (Ariz. Ct. App. 2007). "The types of parties

11   who may be held strictly liable are limited . . . .[to] ensure that strict liability is not extended

12   beyond those entities who are causally linked to the defective product by having placed it

13   into the stream of commerce." *Id.* (citing *Winsor v. Glasswerks PHX, L.L.C.*, 63 P.3d 1040,

14   1048-49 (Ariz. Ct. App. 2003)). Arizona's products liability statute defines "manufacturer"

15   as "a person or entity that *designs*, assembles, fabricates, produces, constructs or otherwise

16   prepares a product or component part of a product before its sale to a user or consumer."

17   A.R.S. § 12-681(3) (emphasis added).

18        Defendants argue that in Arizona, a hotel "is not strictly liable for injuries to a guest

19   caused by dangerous conditions." (Mot. to Dismiss at 3 (citing *Wagner v. Coronet Hotel*, 458

20   P.2d 390, 394-95 (Ariz. Ct. App. 1969)).) Indeed, the Arizona Court of Appeals said in

21   *Wagner* that a hotel could not be strictly liable for harm resulting from a defective product

22   contained in a hotel room. 458 P.2d at 394-95. In *Wagner*, the plaintiff sued the hotel and the

23   shower mat manufacturer for strict liability after he injured himself in a shower at the hotel

24   when the shower mat he was standing on slipped out from underneath him. *Id.* at 391. The

25   court found that the shower mat manufacturer could be held strictly liable, but the hotel could

26   not. *Id.* at 394-95. The court held, "The theory of strict liability in tort applies only to those

27   who are engaged in the business of [s]elling products for use or consumption, such as a

28   manufacturer, wholesaler, retailer, or distributor." *Id.* at 394 (citations ommitted). The court

1   went on to note that the hotel "was only under a duty to keep its premises in a reasonably safe

2   condition;" therefore, the hotel could be charged with negligence for the injury, but not strict

3   liability. *Id.* at 395 (citing *Sherman v. Arno*, 383 P.2d 741 (Ariz. 1963)).

4        However, Arizona common law supports the application of strict liability over entities

5   that have a certain degree of control over the production or design of an allegedly defective

6   product. *See, e.g.*, *Torres*, 786 P.2d at 942. For example, in *Torres*, the Arizona Supreme

7   Court found that a trademark licensor, Goodyear, could be strictly liable for a defective tire

8   even though its subsidiary Goodyear GB had actually manufactured the product. *Id.* The

9   court reasoned that strict liability was applicable because Goodyear had "the ability to design

10  the product, provide specifications for its manufacture, and control the method of

11  manufacture and actual production of the tire." *Id.*

12       In the present case, Plaintiff alleges that the Marriott Defendants "designed the shower

13  seat in question," and this allegation is sufficient to survive the Motion to Dismiss. By stating

14  that the Marriott Defendants "designed the shower seat," Plaintiff alleges that the Marriott

15  Defendants are manufacturers within the meaning of the Arizona products liability statutes.

16  *See* A.R.S. § 12-681(3) (defining a manufacturer as "a person or entity that *designs* . . . a

17  product . . . before its sale to a user or consumer" (emphasis added).) Further, if the Marriott

18  Defendants are a manufacturer, Plaintiff's case is distinguishable from *Wagner* where the

19  hotel had no degree of control over the design of the injury-causing product. Rather, the

20  Marriott Defendants are more like Goodyear in *Torres*, because they allegedly had control

21  over the design of the shower seat that injured Plaintiff. Since the Marriot Defendants fall

22  within Arizona's common law and statutory definitions of who may be held strictly liable,

23  Defendants' Motion to Dismiss for failure to state a claim against the Marriott Defendants

24  is denied.

25       However, Plaintiff's allegations that Phoenix RI "designed or ordered the design" of

26  the Hotel and that it "should have designed or had properly designed the shower seats" fail

27  to state a claim upon which relief can be granted. These allegations are insufficient to claim

28  that Phoenix RI had any control over the design of the shower seat and therefore do not

allege it is a manufacturer under A.R.S. § 12-681(3). *See Twombly*, 550 U.S. at 555 (stating that the pleading must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'"(quoting *Conley*, 355 U.S. at 47)). Absent some level of control over the product's design, there is no justification for departing from the Arizona Court of Appeals' explicit holding that hotels cannot be strictly liable for injuries caused by defective products in hotel rooms. *See Wagner*, 458 P.2d at 394-95. Therefore, this Court dismisses the strict liability claim against Phoenix RI.

### B.    Punitive Damages

Defendants also move to dismiss Plaintiff's request for punitive damages pursuant to Rule 12(b)(6). (Mot. to Dismiss at 5-6.) As explained, Rule 12(b)(6) provides for dismissal when a pleading "fail[s] to state a *claim* upon which relief can be granted." *See supra* Part II. (emphasis added). However, a request for punitive damages is not a "claim" but a "a demand for the relief sought." *See* Fed. R. Civ. P. 8(a)(2)-(3); *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999) (stating that "a request for punitive damages is not a 'claim' within the meaning of 8(a)(2); it is only part of the relief prayed for in a claim"), *vacated in part on other grounds*, 204 F.3d 1069 (11th Cir. 2000). Moreover, Plaintiff does not actually appear to assert that punitive damages is a cause of action that entitles her to relief. (*See* Compl. at 4-5 (labeling the claims of strict liability and negligence – but not punitive damages – as "cause[s] of action").) Therefore, Defendants' Motion to Dismiss Plaintiff's claim for punitive damages is denied.[4]

**IT IS ORDERED** granting in part and denying in part Defendant's Motion to Dismiss. (Doc. 7.) Defendants' Motion is granted with respect to dismissal of Robert Finvarb and the claim for strict liability against Phoenix RI, LLC. The Motion is denied with respect

---

[4] For Plaintiff to recover punitive damages at trial, Plaintiff must show "something more" than mere tortious conduct. *Linthicum v. Nationwide Life Ins. Co.,* 723 P.2d 675, 679 (Ariz. 1986). Plaintiff must show that Defendants' "wrongful conduct was guided by evil motives or wilful or wanton disregard of the interests of others." *Piper v. Bear Med. Sys., Inc.*, 883 P.2d 407, 417 (Ariz. Ct. App. 1993).

1   to the claim for strict liability against Marriott International, Inc. and Marriott Resorts

2   Hospitality, Inc. The Motion is also denied with respect to Plaintiff's request for punitive

3   damages.

4

5        DATED this 26th day of July, 2010.

6

7

8

9   _____
    Susan R. Bolton
10  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28